JAMES L. LANOUX BY AND THROUGH JAMES LANOUX HIS NEXT FRIEND *v.* ROBERT L. HAGAR.

[No. 1-1272A111. Filed April 3, 1974. Rehearing denied May 14, 1974. Transfer denied August 20, 1974.]

*Gerald G. Fuchs, Robert L. Simpkins,* of Evansville, for appellant.

*Robert H. Hahn, George A. Porch,* of Evansville, *Bamberger, Foreman, Oswald and Hahn,* of counsel, of Evansville, for appellee.

LYBROOK, J.—Plaintiff-appellant LaNoux, age 11, sustained personal injuries when the bicycle he was riding was struck by an automobile driven by defendant-appellee Hagar. After a jury trial which resulted in a verdict for Hagar, LaNoux appeals.

The following issues are presented for review:

(1) Whether the court erred in permitting appellant's mother to be cross-examined as to instruction given to her son in riding a bicycle in the streets.

(2) Whether the court erred in instructing the jury.

The evidence disclosed that on the morning of September 30, 1970, Hagar was driving east on Buena Vista, a preferential street in Evansville. LaNoux was riding his bicycle north on Stratford on his way to school. When LaNoux reached the intersection of Stratford and Buena Vista, another automobile proceeding east on Buena Vista in front of Hagar turned right onto Stratford toward the south. A witness testified that the turning vehicle may have blocked Hagar's vision. LaNoux pulled out into the intersection where the left front fender of the Hagar car struck the rear fender of the bicycle's rear wheel, throwing the boy off. There was testimony that LaNoux had failed to come to a complete stop before entering the intersection. LaNoux suffered a broken nose and two fractures of his lower left leg.

## ISSUE 1.

Over vigorous and continuing objections by LaNoux, Hagar's counsel was permitted to cross-examine LaNoux's mother as to the training and instruction the boy had received concerning the riding of his bicycle on the streets.

A condensed version of pertinent portions of the record includes the following questions and Mrs. LaNoux's answers thereto:

"Q. Did you, as the mother and your husband as the father of Jim give him any training and instructions in the riding of a bicycle?

A. Well, we watched over him and we taught him what was right and wrong. And I guess that's training.

Q. In teaching him what was right and wrong as you indicated what, in fact, did you tell him concerning the riding of his bicycle on the street?

A. Well, with his training at school, they do have this training on how to ride your bike and my constant training, I think Jimmie knew the right and wrong of riding a bike.

Q. Would that include, Mrs. LaNoux, stopping for stop signs?

A. Yes.

Q. And in addition to stopping for stop signs, does that include looking in either direction for traffic before crossing a preferential street?

A. He was always told to stop and look both ways.

LaNoux complains that the above questions were highly prejudicial, arguing that the questions impute negligence to the parents. We disagree, and on the contrary, believe that the above evidence tended to prove that LaNoux had received proper instruction and training, not only at school but from his parents as well.

LaNoux also contends that the questions assumed that LaNoux did not stop and look both ways before attempting to cross the preferential street. We do not believe that such an assumption is warranted and conclude that this was proper cross-examination.

It is a well settled rule of law that a child should exercise that care for his own safety which a child of like age, knowledge and experience would ordinarily exercise under the circumstances. See *Indianapolis Railways, Inc.* v. *Williams* (1945), 115 Ind. App. 383, 59 N.E.2d 586 and other authorities cited therein.

*Bixenman* v. *Hall* (1968), 251 Ind. 527, 242 N.E.2d 837, applied this rule to a statutory violation by a 13 year old bicycle rider and observed:

> "Indiana long ago adopted the rule that in negligence cases, the standard of care applicable to a child engaged in the type of activity characteristically engaged in by children is that degree of care that would ordinarily be exercised by children of like age, knowledge, judgment and experience under similar circumstances. *Tabor* v. *Continental Baking Co.* (1941), 110 Ind. App. 633, 38 N.E.2d 257; *Town of Argos* v. *Harley* (1943), 114 Ind. App. 290, 49 N.E.2d 552."

In the case at bar the jury was apprised of this standard by the court's instructions. Schools and parents physically occupy most of a child's time and almost entirely share his early instruction. It was proper for counsel to make inquiry as to the extent of the child's instruction, knowledge and experience from one of the persons most qualified to answer, in this case his mother.

The standard of care to be exercised by an eleven year old child varies from case to case and must be fixed by the jury in each case according to its circumstances. In *Hollowell et al.* v. *Greenfield* (1966), 142 Ind. App. 344, 216 N.E.2d 537 the court observed:

> ". . . The question of what is a reasonable standard of care for an eleven year old boy is so troublesome it belies the imagination. The question presents itself as thus: would an eleven year old boy climb a dangerous tree; would he operate a bicycle in heavy traffic disregarding the rules of traffic; would he play with a loaded firearm given to him by another. . . ."

Obviously, it is proper for a jury to hear evidence regarding a child's experience and training. LaNoux's counsel evi-

dently anticipated this issue when he remarked in his opening statement: · ·

> "... But nevertheless, you will see after all of this evidence, ladies and gentlemen, that this boy was a pretty careful boy, from the evidence. He stopped and he looked both ways, he did what he was taught to do; * * *."

Evidence of warnings given to a child by an adult has been admitted in other cases. *Indianapolis Water Company* v. *Harold* (1908), 170 Ind. 170, 83 N.E. 993, involved a nine year old boy who drowned after being warned by others not to cross a foot bridge. In *Bass, Receiver* v. *Reitdorf* (1900), 25 Ind. App. 650, 58 N.E. 95, evidence of verbal and printed warnings to a sixteen year old who later drowned, was admitted. In *Indianapolis Traction and Terminal Company* v. *Croly* (1911), 54 Ind. App. 566, 96 N.E. 973, an eleven year old child was injured by a street car. Evidence of previous warnings by her sister and mother to look out for cars and keep out of their way was admitted.

Considering the vast discretion accorded the trial court in fixing the boundaries of cross-examination, and in harmony with the authorities cited, we find that appellant has demonstrated no error under the first issue.

## ISSUE 2.

Appellant next takes exception to ten instructions which were given by the court. We shall discuss eight of them together because of appellant's assertion that each one holds LaNoux to an adult standard of care rather than that of an eleven year old child. These instructions are Court's Instructions Nos. 15, 17, 18, 19, 25 and defendant's tendered instructions Nos. 3, 5 and 7.

In the interest of brevity we shall not set out each of the above instructions in this opinion. Most of them are commonly known in the trade as "stock" and contain the usual language familiar to every negligence lawyer.

The central theme of appellant's complaints is that most of these instructions omit the standard of care applicable to an eleven year old plaintiff. To illustrate, Court's Instruction No. 15 read as follows:

"Negligence is the failure to do what a reasonably careful and prudent person would have done under the same or like circumstances, or the doing of some thing. which a reasonably careful and prudent person would not have done under the same or like circumstances; in other words, negligence is the failure to exercise reasonable and ordinary care."

The above instruction merely informs the jury of the standard definition of negligence used uniformly throughout the State of Indiana. Although it does not mention the standard of care applicable to a child, it is undeniably a correct statement of the law.

Court's Instruction No. 17 in like manner defined contributory negligence, and Court's Instruction No. 18 even applied contributory negligence by telling the jury that plaintiff should "exercise such care for his own safety as would ordinarily be exercised by a child of like age, knowledge, judgment and experience under the facts, circumstances and conditions disclosed by the evidence." With the standards of *Bixenman, supra,* in mind, we are unable to fathom appellant's objection to this instruction.

Court's Instruction No. 19 was a standard definition of reasonable care. Defendant's tendered Instruction No. 3 informed the jury that if they found that the defendant was lawfully driving his automobile at the time and place in question, he had a right to assume that the plaintiff would exercise ordinary care.

Defendant's Instruction No. 5 set forth portions of the statute requiring a driver of a vehicle to stop at a through highway and the statute requiring the operator of any bicycle on any public highway to observe the requirements of the

motor vehicle statutes. IC 1971, 9-4-1-83 (Burns Code Ed.); IC 1971, 9-4-1-101 (Burns Code Ed.).

Court's No. 25 instructed the jury that proof of violation of the statute by the plaintiff raised a rebuttable presumption of negligence on the part of the plaintiff, but contained the proviso that the presumption could be rebutted by proof that the plaintiff "exercised that degree of care which would ordinarily be exercised by a child of the same age, experience, intelligence and educational level."

At this point, we note that contrary to appellant's contention, defendant's Instruction No. 5 and Court's Instruction No. 25, when read together, do not instruct the jury that the statutes had in fact been violated. This remained a question for the jury's determination.

Finally, defendant's tendered Instruction No. 7 instructed the jury that LaNoux could not recover if he "failed to exercise such care for his own safety which a reasonably careful and prudent child of his age, intelligence, training and experience would have exercised under the circumstances. . . ."

We must determine at the outset whether the above instructions are mandatory in character or otherwise. It has been held that mandatory instructions are those which attempt to set up a factual situation and then direct the jury to a certain result. They are to be distinguished from instructions which merely state propositions of law without incorporating a factual situation. *Perry* v. *Goss* (1970), 253 Ind. 603, 255 N.E.2d 923.

In *Shelby Nat'l. Bk., Adm.* v. *Miller* (1970), 147 Ind. App. 203, 259 N.E.2d 450, the court observed:

"Except as to mandatory instructions, ambiguity, inaccuracy, or incompleteness of one instruction may be cured by another instruction which is not inconsistent with the other. A party cannot complain of a non-mandatory instruction given by the court, which although incomplete, is a correct statement of the law so far as it goes where

such party did not tender a more full instruction on the subject. 2 Wiltrout, Indiana Practice, § 1400."

We observe that none of the above instructions direct the jury to reach a certain result under a set of facts set forth in the instruction. We therefore conclude that these instructions were not mandatory under the standards of the cases cited above.

Furthermore, the trial court correctly instructed the jury that all the law in the case was not embodied in any single instruction and that therefore the instructions should be considered as a whole and construed in harmony with each other.

In *Lutz* v. *Goldblatt Brothers, Inc., Etc.* (1967), 140 Ind. App. 678, 225 N.E.2d 843, the court held that:

> "Non-mandatory instructions given in a case must be considered as a whole and with reference to each other and not as isolated individual instructions, and it is sufficient if considering the instructions as a whole when the jury has been fully and fairly instructed. 2 I.L.E., *Appeals*, § 526, p. 439; 28 I.L.E., *Trial*, § 272, p. 266; Flanagan, Wiltrout and Hamilton, Indiana Trial and Appellate Practice, § 1510, p. 237; Wiltrout, Indiana Practice, ch. 66, § 1400, p. 339."

Other Indiana decisions of the same tenor are: *Lamb* v. *York* (1969), 252 Ind. 252, 247 N.E.2d 197; *Huey* v. *Milligan* (1961), 242 Ind. 93, 175 N.E.2d 698; *McCleary* v. *Mowery* (1967), 141 Ind. App. 672, 231 N.E.2d 165.

This court has further held that it is unnecessary to instruct the jury on a specific rule of law more than once. *Rust et al.* v. *Watson* (1966), 141 Ind. App. 59, 215 N.E. 2d 42. In the case at bar the jury was correctly instructed concerning the standard of care applicable to a child, not once, but in four separate instructions. One of the latter instructions was plaintiff's Instruction No. 5 and it was couched in langauge similar to the other instructions which plaintiff regards as objectionable.

· Considering all of the instructions as a whole, as we are required to do, we are of the opinion that the jury was fairly instructed, particularly concerning a child's standard of care.

Appellant also takes exception to defendant's Instruction No. 1, which read as follows:

"The Court instructs you that the mere fact that there was a collision between the bicycle operated by the plaintiff and the automobile operated by the defendant, and that plaintiff may have been injured, carries with it no presumption of negligence on the part of the defendant. Moreover, the mere fact that there was such a collision and that plaintiff may have been injured cannot form a basis for you to infer that the defendant was in any way guilty of the negligence charged."

LaNoux charges that the above instruction is a "pure accident" instruction and is forbidden by *Miller* v. *Alvey* (1965), 246 Ind. 560, 207 N.E.2d 633. As expected, appellee defends the above instruction, citing *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160 and *Perry* v. *Goss, supra,* where somewhat similar instructions were held not to be "pure accident" instructions. We agree with appellee. The above instruction simply told the jury that it requires more than the happening of the accident and injuries to the plaintiff to presume or infer negligence on the part of the defendant. This instruction was a correct statement of the law.

Finally, LaNoux objects to defendant's Instruction No. 8 which is a standard instruction on sudden emergency. LaNoux does not seem to deny that the circumstances of the collision suggest sudden emergency, but objects again to the absence of the specific mention of the child's standard of care.

Appellee contends that there was ample evidence demonstrating that LaNoux suddenly appeared in front of the hood of the Hagar automobile.

We conclude that the evidence justified the giving of an instruction on the doctrine of sudden emergency. Defendant's

Instruction No. 8 is explanatory and not mandatory in nature. For the reasons given in discussing the first eight instructions the instruction was correct and properly given.

Finding no error in the proceedings of the trial court the judgment is affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 308 N.E.2d 873.