**SCHOOL CITY OF GARY, Appellant (Defendant Below),**

v.

**Alfonso R. CLAUDIO b/n/f Pedro Claudio and Pedro Claudio, Appellees (Plaintiffs Below).**

**No. 3–579A145.**

Court of Appeals of Indiana, Third District.

Dec. 15, 1980.

John W. Barce, Barce, Vann & Ryan, Fowler, for appellant; T. Sherman McClean, Gary, of counsel.

Max Cohen, Dawn Wellman, Cohen & Thiros, Merrillville, for appellees.

HOFFMAN, Judge.

The School City of Gary appeals the trial court's judgment in favor of Alfonso Claudio and his father Pedro for damages sustained as a result of Alfonso being run over by a bus. Alfonso and Pedro were awarded $175,000 and $41,000 respectively.

The issues raised by School City have been consolidated as follows:

(1) whether the evidence is sufficient to establish negligence on the part of School City;

(2) whether the verdict is contrary to the evidence regarding contributory negligence;

(3) whether the trial court erred in admitting the testimony of an expert witness not listed in the pretrial order;

(4) whether the trial court erroneously denied School City an opportunity to cross–examine a witness regarding a prior inconsistent statement;

(5) whether the trial court erred in allowing impeachment from a written statement not introduced into evidence; and

(6) whether the trial court erred in the giving of certain of Claudio's instruc-

tions and refusing to give other instructions tendered by School City.

The record reveals that on September 18, 1974 ten year old Alfonso Claudio was struck by a bus while he and other bused children were waiting outside the Bethune School in Gary. Alfonso sustained severe injuries as a result of the accident. The evidence is conflicting as to exactly how the accident happened. One version has Alfonso slipping and falling after he had jumped and grabbed onto an open window of the moving bus. A second version has Alfonso running toward the bus and tripping. The final version indicates that Alfonso was running toward the bus and was pushed beneath its wheels by another student. The evidence is equally conflicting as to how many, if any, teachers were present at the time of the accident.

■ School City argues that the evidence is insufficient to establish that it was negligent in its supervision of the children. When sufficiency of the evidence is at issue an appellate court will not weigh conflicting evidence nor judge the credibility of witnesses, but will consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Ray v. Goldsmith* (1980), Ind.App., 400 N.E.2d 176. Such evidence in the present case indicates that no teachers were present at the time of the accident.

The elements of negligence with respect to the relationship between students and school personnel were discussed at great length in *Miller v. Griesel et al.* (1974), 261 Ind. 604, 308 N.E.2d 701. The Court there noted the "well recognized duty in tort law that persons entrusted with children, or others whose characteristics make it likely that they may do somewhat unreasonable things, have a special responsibility recognized by the common law to supervise their charges." *Id.* at 706 *citing* Restatement Torts 2d § 320; Prosser, Torts § 33, p. 172 (4th ed. 1971). This duty was held to be applicable to schools.

■ After establishing a duty on the part of schools to supervise children under their control, the Court turned its attention to the standard of care required. Emphasizing that schools are "not intended to be insurers of the safety of their pupils" the Court held that schools are required to exercise ordinary and reasonable care in supervision. *Id.* Thus, schools have been found not negligent when an accident is of doubtful foreseeability, *Driscol et al. v. Delphi School Corp.* (1972), 155 Ind.App. 56, 290 N.E.2d 769 (child fell while running to a shower after gym class), or under circumstances where there is no dangerous condition or instrumentality present. *Norman v. Turkey Run Comm. School Corp.*, (1980) Ind., 411 N.E.2d 614 (two children collided while running on playground); *Bush v. Smith et al.* (1972), 154 Ind.App. 382, 289 N.E.2d 800 (student injured on high jumping equipment during non–school hours). The boarding of a bus by young children does, however, involve a dangerous condition and accidents such as the one in the present case are not of doubtful foreseeability. A school, therefore, does have a duty to maintain some level of supervision over students under its control while they are waiting for, and boarding, buses. A total lack of supervision constitutes negligence.

■ School City correctly states that negligence alone is insufficient to fix liability. A causal relationship between the negligence and the injury must also be shown. *Medsker v. Etchison* (1936), 101 Ind.App. 369, 199 N.E. 429. The issue of proximate cause is, however, a question of fact for the jury if different minds might reasonably draw different inferences from the facts given. *Elder v. Fisher* (1966), 247 Ind. 598, 217 N.E.2d 847. *See also, Ortho Pharmaceutical Corp. v. Chapman* (1979), Ind.App., 388 N.E.2d 541. In such cases an appellate court is bound by the jury's findings. *Peterson v. Culver Educational Foundation* (1980), Ind.App., 402 N.E.2d 448. Different minds might reach different results with regard to the school's lack of supervision being a proximate cause of the accident. The jury's finding as to proximate cause will therefore not be set aside.

School City contends that under any version of the accident the evidence shows Alfonso was contributorily negligent. The applicable standard of care for a child varies from case to case and must be fixed by the jury in each case according to the circumstances. *LaNoux v. Hagar* (1974), 159 Ind.App. 646, 308 N.E.2d 873. In fixing that standard the jury must consider the degree of care that would ordinarily be exercised by children of like age, knowledge, judgment and experience under similar circumstances. *Id.*

The record contains much testimony regarding the knowledge and experience of the students with respect to busing procedures. The accident occurred during the first year that students were bused to Bethune. Additionally, school had been in session only a very short time prior to the accident. The evidence is conflicting as to whether the children had been given any instructions or warnings by the school regarding busing procedures. When the children's limited experience with buses is combined with the natural tendencies of ten year olds to run and play, it cannot be said that the jury's resolution of the contributory negligence question is contrary to law.

School City next alleges as error the admission of testimony from an expert witness who was not listed in the pretrial order. The witness, Robin Smith, gave testimony regarding procedures commonly used by schools to insure safety while students board buses.

Upon objection by School City the following exchange took place:

"THE COURT: My question is what would have been the purpose of taking the deposition?

"MR. McCLEAN: To see whether he is an expert. To formulate our cross–examination of him.

"MR. BARCE: And to see if we need an expert to counter him."

*Record* at 583.

The court then permitted School City to conduct an extensive voir dire of Mr. Smith in connection with his qualifications as an expert and his knowledge of safety procedures. School City renewed its objection at the close of voir dire. The trial court overruled the objection and direct examination of Mr. Smith proceeded.

When the trial court overruled the objection, School City was given a choice to proceed with the trial and attempt to cross–examine Mr. Smith with the information elicited on voir dire or to request a continuance for the purpose of gathering evidence to counter Mr. Smith. School City chose to proceed. The failure to request a continuance constitutes a waiver of School City's objection to the admission of the testimony. *City of Evansville v. Rieber* (1979), Ind. App., 385 N.E.2d 217; *Hirsch et al. v. Merchants Nat'l Bk.* (1975), 166 Ind.App. 497, 336 N.E.2d 833.

School City raises several issues regarding the use of prior written statements made by witnesses. Inasmuch as these issues are related they will all be discussed in this section.

The first alleged error concerns the trial court's sustaining of Claudio's objection to the following question:

"Q. Did you ever make the statement, Karen, that you thought Joey getting hurt was his own fault?"

*Record* at 465.

Claudio contends that the question is improper impeachment. School City argues that if the witness had made the statement it was inconsistent with the general nature of her direct testimony and therefore proper impeachment. The witness, Karen Bernard, testified on direct examination as to various circumstances existing at the time of the accident. She did not however testify to actually seeing the accident. On cross–examination School City attempted to impeach Karen with prior inconsistent statements. Karen either denied, or stated that she did not remember, making most of the statements. It was during this impeachment that the question in issue was asked.

School City cites *Rieth–Riley Constr. Co. v. McCarrell* (1975), 163 Ind.App. 619, 325

N.E.2d 844, and *Shelby Nat'l Bk., Adm. v. Miller* (1970), 147 Ind.App. 203, 259 N.E.2d 450, as authority for the admission of a prior inconsistent statement of opinion for impeachment purposes. Both cases, however, are clearly distinguishable from the case at bar.

The attorney in *Rieth–Riley* was permitted to read to the jury a prior statement of opinion as to the ultimate issue. The Court of Appeals upheld the trial court's ruling stating:

"Since Pound was the only eyewitness to the collision and since he had previously testified both as to his experience as an operator of motor vehicles and to the facts forming the basis of his statement, we are not inclined to hold that admission of his inference concerning the unavoidability of the accident based upon his perception of the totality of the circumstances was an abuse of judicial discretion." 325 N.E.2d at 853.

In the present case Karen did not testify on direct examination to any facts upon which the opinion sought could be based. On cross–examination Karen expressly denied making any statements upon which the opinion could be based. In fact, on cross–examination, Karen denied seeing the accident happen. The prior opinion sought by School City therefore is not based upon any facts, nor is it inconsistent with any statements made by Karen during her testimony.

*Shelby National Bank* concerned the admissibility of a prior opinion rendered during the course of a conversation. The Court there held that when part of a conversation is testified to on direct examination the door is opened for the adverse party to prove the remainder of the conversation despite the fact that it contains an opinion. The prior statement of Karen was not brought out during direct examination. School City, therefore, did not have an absolute right to enter her prior opinion into evidence for impeachment purposes.

The case at bar is more similar to *Spurlin v. State* (1919), 189 Ind. 273, 124 N.E. 753. There the Court held the exclusion of a

prior opinion proper because it "contradicts nothing stated by the witness on the trial, and, being an opinion, it involves no fact which the witness sought to be impeached stated in her testimony." *Id.* at 754. Karen made no assertions either express or implied, nor did she state an opinion, as to whom was at fault for the accident. She merely testified to surrounding circumstances at the time of the accident. In view of these facts, together with Karen's testimony that she did not see the accident, the trial court committed no error in ruling that the statement was improper impeachment.

The next alleged error with respect to a prior statement concerns the question, "Was Joey breaking the instructions he had been given out there that day?" The trial court sustained Claudio's objection that the question assumed a fact not in evidence.

▆▆▆▆ Questions on cross–examination may not assume facts to have been proven which have not been entered into evidence. *Essex v. Millikan* (1928), 88 Ind.App. 399, 165 N.E. 284. The question in issue was asked of Karen Bernard. Karen was the first witness questioned during the trial. Prior to the question she testified that her parents had received a letter containing information on how students were to behave while on buses and where students should meet prior to being picked up in the morning. A review of the record does not indicate that Karen had ever been given instructions regarding procedures in boarding buses after school prior to the time of the accident. Inasmuch as School City's question assumed such instructions had been given to Karen and Alfonso, the trial court committed no error in sustaining Claudio's objection.

School City's third allegation of error with respect to prior statements concerns the court's refusal to admit into evidence defendant's Exhibit F. This exhibit is a prior written statement of the witness Debra Vinson which had previously been marked for identification as plaintiff's Exhibit 5. Although Debra acknowledged that the signature on the statement was

hers, and Claudio used the statement in impeaching Debra, Claudio did not offer the statement for admission.

School City argued to the trial court that the entire statement was admissible because portions of it were rehabilitative to the witness. Claudio did not question School City's right to go into these portions, but contended that the entire statement was not admissible. The trial court ruled that the proper foundation had not been laid for the admission of written statement, but did allow School City to use the statement in rehabilitating the witness.

 The trial court erred in not admitting the statement. The general rule is that when a portion of a prior statement is used on cross–examination for impeachment purposes, the door is opened to the introduction of the entire statement during redirect examination. *Patterson v. State* (1974), Ind.App., 314 N.E.2d 92; *Elgin, Joliet & Eastern R. Co. v. Collins* (1970), 147 Ind.App. 343, 260 N.E.2d 810. During Claudio's cross–examination of Debra the statement was shown to the witness and she acknowledged that the signature at the bottom of each page was hers. This acknowledgment laid the proper foundation for the admission of the prior written statement. School City was therefore entitled to have the statement admitted during redirect examination.

 The error by the trial court however is not reversible error. Ind.Rules of Procedure, Trial Rule 61, does not permit this Court to set aside a verdict on the grounds of error in either the admission or exclusion of evidence unless the failure to do so is "inconsistent with substantial justice." Inasmuch as School City was given the opportunity to use the entire statement in questioning the witness on redirect examination, the trial court's error was not prejudicial. The verdict cannot be set aside because of harmless error.

School City next alleges as error questions propounded to Timothy Bowie and Girard Schafbuch regarding a statement given by Bowie to Schafbuch. School City contends that before any questions taken from a written statement may be asked, the statement must be identified and introduced into evidence. This procedure, according to School City, allows the opposing counsel, the witness and the jury to judge the accuracy of the question. The procedure would also allow rehabilitation of the witness by admission of the entire statement or portions thereof.

School City's reliance on *Grossnickle v. Avery* (1926), 96 Ind.App. 479, 152 N.E. 288, is misplaced. The Court there stated:

> "It is not necessary in the instant case for us to determine the extent to which a witness may be cross–examined, if at all, concerning the contents of the supposed contradictory writing. All we need to determine is whether a proper foundation was laid for the introduction of the statements of the witnesses."

*Id.* at 290.

The Court went on to hold that the necessary foundation for the introduction of a prior inconsistent written statement includes showing the writing to the witness and, if subscribed, proving his signature. *Grossnickle* therefore is not applicable in the present case.

 Initially it must be noted that the trial court has considerable latitude in the admission or rejection of evidence and it is only when an error by the judge relates to a material matter, or is of such character as to substantially affect the rights of the parties that such an error justifies a reversal. *Lovko v. Lovko* (1978), Ind.App., 384 N.E.2d 166. No such error is present in the case at bar.

 Contrary to the argument advanced by School City, the statement was produced and marked for identification purposes. Timothy Bowie acknowledged that it was his signature on each page of the statement. Additionally, Schafbuch testified that the document he was given to examine was a duplicate of the original statement given him by Bowie. Apparently School City either was allowed to examine the statement, or received a copy of it, as the statement was used in School City's

redirect examination of Bowie and cross–examination of Schafbuch. If School City desired other portions of the statement to be entered into evidence it could have either: questioned the witness regarding those parts; requested those portions to be read into evidence; or moved to have the entire statement entered. School City chose not to take such action. The trial court committed no prejudicial error in permitting Claudio to question witnesses regarding the prior written statements when those statements were present before the court, marked for identification purposes and acknowledged by the witnesses.[1]

School City alleges that the trial court erred in refusing to give, or in modifying, four of its tendered instructions. These instructions pertained to: 1) the standard of care required to be exercised by a child in avoiding an accident; 2) plaintiff's burden of proof; 3) standard of care required of the school; and 4) proximate cause.

■ In reviewing a trial court's refusal of tendered instructions an appellate court must determine: 1) whether the tendered instruction correctly states the law; 2) whether there is evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Dahlberg, Admx. v. Ogle et al.* (1978), 268 Ind. 30, 373 N.E.2d 159. Instructions must be considered as a whole in determining whether the jury was fairly and properly instructed and all applicable law need not be incorporated in a single instruction. *Palmer v. Decker* (1970), 253 Ind. 593, 255 N.E.2d 797.

■ The standard of care required of a child is adequately covered by the court's Final Instructions A[2] and B,[3] together with plaintiff's Instruction No. 5,[4] also given by the court. The jury was also adequately instructed as to the burden of proof by the court's Preliminary Instruction No. 3[5] which the court repeated in its final instructions. The standard of care required by a school was covered by the court's Preliminary Instruction No. 4[6] (repeated by the trial court during final instructions), defendant's Instruction No. 12 and the court's Final Instruction D.[7] Finally, the jury was properly instructed as to the issue of proximate cause by plaintiff's Instruction No. 8[8] (given by the court), defendant's Instruction No. 9 and the court's Final Instruction C.[9]

■ School City claims error in the trial court's giving of plaintiff's Instruction No. 8 in that the instruction places an affirmative duty on the school to supervise the children while waiting for buses and fixes a standard of care higher than that of the ordinary and reasonable standard. As noted previously, however, a school does have a duty to exercise ordinary and reasonable care for the supervision of students under its control while they await the arrival of buses. The instruction also correctly states the applicable standard of care in that it instructs the jury that the plaintiff has the burden of proof to establish negligent supervision. Negligence was defined by the court in Preliminary Instruction No. 4 (repeated by the court during final instructions) as "the failure to exercise reasonable or ordinary care."[10] The trial court committed no error in giving the instruction.

1. Schafbuch's testimony may have been inadmissible as extrinsic evidence of a prior inconsistent statement which was admitted by the declarant. School City, however, did not object to the testimony on this ground and the issue is therefore not before this Court.

2. Indiana Pattern Jury Instructions § 5.21.

3. *Id.* at § 7.05.

4. *Id.* at § 5.29.

5. *Id.* at § 1.07.

6. *Id.* at § 5.01.

7. *Id.* at § 5.03.

8. *Id.* at § 7.03.

9. *Id.* at § 5.81.

10. *Id.* at § 5.01.

School City also objects to plaintiff's Instruction No. 17,[11] given by the court, which instructs the jury that the failure of a party to produce a witness within its control raises an unfavorable inference as to the testimony of that witness. School City contends that in cases, such as the one here present, where the witnesses are available to both parties, the giving of the instruction is improper.

While it is true that the instruction is improper where the missing witness is available to both parties, error in this regard does not always create grounds for reversal. In *Chrysler Corp. v. Alumbaugh et al.* (1976), 168 Ind.App. 363, 342 N.E.2d 908, the Court, after finding a similar instruction improper, stated:

"Nevertheless, when reviewing the use of an instruction, we must consider whether an appellant has demonstrated harm. Our consideration has been expressed as determining whether the error is likely to have influenced the verdict." (Citations omitted.)

*Id.* at 918.

The Court in *Chrysler* found that it was the testimony of the witnesses rather than the inference prompted by the instruction which contributed to the verdict. Therefore no prejudicial error was shown. *Id.*

■ In the present case the missing witnesses were two of the teachers who allegedly participated in supervising the children while waiting for buses. Numerous witnesses testified that no teachers were present on the day of the accident. Other witnesses testified that either one, or both, of the missing witnesses were present. There was testimony that these teachers participated in a meeting prior to the accident in which school officials gave instructions on busing procedures. There was also testimony that such a meeting was not held until after the accident. It is apparent that it was the testimony of the witnesses who appeared at trial, and not an inference raised by the erroneous instruction, which contributed to the jury's verdict. No prejudicial error has been demonstrated by School City.

■ School City also objects to plaintiff's Instruction No. 13[12] which allows the jury, if it finds for Pedro, to consider the reasonable value of the loss of services, society and companionship of Alfonso both in the past and in the future. School City contends that this instruction permits the jury to speculate and conjecture as to the existence and amount of damages in that no evidence of such loss was adduced at trial.

School City's argument ignores the evidence of the amount of time Alfonso had been hospitalized in the past and the amount of time that doctors estimated he would have to spend hospitalized in the future. School City also overlooks defendant's Instruction No. 7, given by the court, which instructs the jury not to guess, surmise or conjecture about any injury or damage not proven by a preponderance of the evidence. The giving of the instruction was not improper.

■ Finally, School City contends that the giving of plaintiff's Instructions Nos. 9[13] and 13 allowed the jury to twice consider the value of future medical expense in awarding damages. Instruction No. 9 permitted the jury to consider compensation to Alfonso for reasonable expense of future medical care, treatment and service. Instruction No. 13 allowed the jury to determine the amount of money which would fairly compensate Alfonso's father for reasonable and necessary expenses incurred by him for future medical care and treatment of Alfonso until his son reaches age 18.

Instruction No. 9 allows the jury to fairly "compensate" Alfonso for the reasonable expense of future medical care, treatment and service. Inasmuch as "compensation" is synonymous with "reimbursement" and "repayment," the jury is allowed to consider only those future medical expenses which

11. *Id.* at § 3.13.

12. *Id.* at §§ 9.01(N) and 9.01(O).

13. *Id.* at § 9.01 *et seq.*

will actually be incurred by Alfonso. When this instruction is read together with Instruction No. 13 which allows Pedro to be compensated for future medical expenses incurred by him for his son until age 18, it is clear that the instructions do not allow double damages. Instruction No. 9 allows Alfonso damages only for those future medical expenses that will be incurred by him, including those incurred after age 18. Instruction No. 13 limits Pedro's recovery to the fair value of future medical expenses incurred by him for Alfonso until age 18. The trial court committed no error in giving these instructions.

For the above reasons, the judgment of the trial court is affirmed.

Affirmed.

GARRARD, P. J., and CHIPMAN, J., participating by designation, concur.